**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>OXFORD MARKETING PARTNERS, LLC,<br><br>  Defendant. | Case No. 1:19-cv-04292<br><br><br>JURY DEMANDED |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Jourey Newell ("Mr. Newell") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission ("FCC").[1]

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. Plaintiff alleges that Defendant Oxford Marketing Partners, LLC ("Oxford" or "Defendant") made automated telemarketing calls to his cellular telephone to promote health insurance products and services in violation of the TCPA.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ 1 (July 10, 2015).

5. Also in violation of the TCPA, Oxford failed to maintain adequate procedures to maintain an internal do not call list.

6. Because the calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of proposed nationwide classes of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff Jourey Newell is a resident of Pennsylvania.

9. Defendant Oxford Marketing Partners, LLC is a Delaware limited liability company registered to do business in Illinois with its principal place of business at 215 West Ohio St., Floor 6, in Chicago, Illinois 60654.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and maintains its principal place of business in this district.

## The Telephone Consumer Protection Act

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA's Internal Do Not Call List Requirements</u>

18.    The TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

19.    This includes the requirements that:

- "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list" (47 C.F.R. 64.1200(d)(1));

- "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list" (47 C.F.R. 64.1200(d)(2));

- Persons or entities making telemarketing calls must honor do-not-call requests within a reasonable time, not to exceed thirty days, from the date such request is made (47 C.F.R. 64.1200(d)(3)); and

- "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." (47 C.F.R. 64.1200(d)(6)).

20. Pursuant to 47 C.F.R. 64.1200(e), the rules set forth above in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers …."

The Growing Problem of Automated Telemarketing

21. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

22. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/policy/advocacy/advocacy-filings/2016/06/ftc-staff-comment-federal-communications-commission-rules.

23. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

24. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

25. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

## Factual Allegations

26. Oxford markets and sells health insurance products and services to consumers.

27. Oxford uses telemarketing to promote its products and services and solicit new customers.

28. Oxford's telemarketing efforts include the use of automated dialing equipment and pre-recorded messages to send automated calls.

29. Oxford engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on the sales they complete, or on an hourly basis, only talk to individuals who respond. Therefore, Oxford shifts the burden of wasted time onto consumers.

**Calls to Mr. Newell**

30. Mr. Newell is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

31. On February 1, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford.

32. Mr. Newell had no prior relationship with Oxford and did not consent to be called by Oxford.

6

33. Upon answering the call, Mr. Newell heard a long pause. Mr. Newell said hello with no response. He then heard a "bloop" noise distinctive of calls made using a type of automatic telephone dialing system ("ATDS") known as a predictive dialer.

34. Finally, Mr. Newell was connected with a live representative, "Jeremey," who proceeded to promote health insurance products and services and confirm their conversation in an e-mail.

35. The e-mail was sent from jeremey@oxfordinspartners.com.

36. This is an e-mail address belonging to the Defendant.

37. When Mr. Newell received the e-mail, he made a request to Oxford and asked to not be contacted again.

38. However, despite his request, Mr. Newell was contacted again.

39. On June 7, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford.

40. Upon answering the call, Mr. Newell heard a long pause. Mr. Newell said hello twice with no response. This was consistent with calls made using a type of ATDS known as a predictive dialer.

41. Finally, Mr. Newell was connected with a live representative, Jeremey, who proceeded to promote health insurance products and services.

42. Mr. Newell was not interested, and he sent an e-mail to jeremey@oxfordinspartners.com asking to no longer be called.

43. The calls continued.

44. On June 13, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford.

45. Upon answering the call, Mr. Newell heard a long pause. Mr. Newell said hello twice with no response. This was consistent with calls made using a type of ATDS known as a predictive dialer.

46. Mr. Newell was again connected with a live representative who proceeded to promote health insurance products and services.

47. Mr. Newell made another request to no longer be called.

48. The calls continued.

49. On June 19, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford.

50. Upon answering the call, Mr. Newell heard a long pause. Mr. Newell said hello twice with no response. This was consistent with calls made using a type of ATDS known as a predictive dialer.

51. Mr. Newell was again connected with a live representative, Jeremey, who proceeded to promote health insurance products and services.

52. Mr. Newell was not interested and asked to no longer be called.

**Class Action Allegations**

53. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

54. The classes of persons Plaintiff proposes to represent is tentatively defined as:

> Class 1
>
> All persons within the United States to whom: (a) Oxford, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting health insurance products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded

8

> voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.
>
> Class 2
>
> All natural persons within the United States to whom: (a) Defendant, and/or a third party acting on its behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

55. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

57. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds of thousands of individuals a day. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the proposed classes.

59. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether the Defendant violated the TCPA by using automated telemarketing to call cellular phones;

    b. Whether the Defendant placed calls using an ATDS;

    c. Whether the Defendant placed calls without obtaining the recipients' prior consent for the call;

    d. Whether Defendant violated the TCPA by failing to implement adequate procedures to maintain an internal do-not-call list; and

  e. Whether Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

60. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendant and are based on the same legal and remedial theories.

61. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

63. The actions of the Defendant are generally applicable to the classes and to the Plaintiff.

64. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

65. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

66. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

67. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the classes using an ATDS and/or an artificial or prerecorded voice.

69. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violation of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

70. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the classes are entitled to an award of up to treble damages.

71. Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Count Two:**
**Violation of the TCPA, 47 U.S.C. § 227(c)**

72. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

73. The foregoing acts and omissions of the Defendant constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity. 47 C.F.R. 64.1200(d).

74. The Defendant failed to maintain an internal do-not-call list.

75. The Defendant failed to train its personnel as to the existence of and/or use of a do-not-call list.

76. The Defendant did not honor do-not-call requests, much less for five years as required.

77. The Defendant's violations were willful and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed classes;

B. Appointment of the Plaintiff as representative of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Lauren E. Urban (6293832)
2425 N. Spaulding Ave., Floor 2
Chicago, IL 60647
(419) 344-1146
lauren.elizabeth.urban@gmail.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com