IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated, | : : : |
| Plaintiff, | : Case No. 1:19-cv-04292 : : Judge Rebecca R. Pallmeyer |
| v. | : : |
| OXFORD MARKETING PARTNERS, LLC | : : : |
| Defendant. | : : / |

**PLAINTIFF'S OPPOSITION TO OXFORD MARKETING PARTNERS, LLC'S MOTION TO STRIKE CLASS ALLEGATIONS FOR CLASS 2 OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 23(d)(1)(D)**

The Plaintiff has alleged that Oxford Marketing Partners, LLC ("Oxford") made systemic telemarketing calls without the requisite policies and procedures required under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Oxford hasn't provided any information to dispute this fact, and the Plaintiff has propounded to discovery to confirm that fact. Despite this, Oxford has filed a motion to strike the class definition pertaining to that claim asserting that the definition is overbroad. However, as the class definition is tailored to the underlying claim, the motion should be denied.

**BACKGROUND**

The TCPA is a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal

1

Communications Commission ("FCC").[1]

TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6). This includes the requirements that:

- "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list" (47 C.F.R. 64.1200(d)(1));
- "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list" (47 C.F.R. 64.1200(d)(2));
- Persons or entities making telemarketing calls must honor do-not-call requests within a reasonable time, not to exceed thirty days, from the date such request is made (47 C.F.R. 64.1200(d)(3)); and
- "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." (47 C.F.R. 64.1200(d)(6)).

On February 1, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford. *See* ECF No. 1 at ¶ 31. Mr. Newell had no prior relationship with Oxford and did not consent to be called by Oxford. *Id.* at ¶ 32. The call was automated, but Mr. Newell was eventually connected with a live representative, "Jeremey," who proceeded to promote health insurance products and services and confirm their conversation in an e-mail. *Id.* at ¶ 33-4. When Mr. Newell received the e-mail, he made a request to Oxford and asked to not be contacted again. *Id.* at ¶ 37.

However, despite his request, Mr. Newell was contacted again. *Id.* at ¶ 38. On June 7, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number,

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ 1 (July 10, 2015).

(484) 213-XXXX, from Oxford. *Id.* at ¶ 39. "Jeremey" again proceeded to promote health insurance products and services. *Id.* at ¶ 41. Mr. Newell was not interested, and he sent an e-mail to jeremey@oxfordinspartners.com asking to no longer be called. *Id.* at ¶ 42.

The calls continued. *Id.* at ¶ 43. On June 13, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford. *Id.* at ¶ 44. Mr. Newell was again connected with a live representative who proceeded to promote health insurance products and services. *Id.* at ¶ 45. Mr. Newell made another request to no longer be called. *Id.* at ¶ 46. The calls continued. On June 19, 2019, Mr. Newell received an automated telemarketing call on his cellular telephone number, (484) 213-XXXX, from Oxford. *Id.* at ¶ 47.

One of the classes that Mr. Newell is pursuing is:

> All natural persons within the United States to whom: (a) Defendant, and/or a third party acting on its behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

*Id.* at ¶ 54.

## ARGUMENT

Oxford's motion to strike reads more like a motion to dismiss and laments that the Plaintiff's second class doesn't "require that any such calls were made via an artificial or prerecorded voice, via an automatic telephone dialing system, without the consent of the called party, in the absence of a pre-existing business relationship, after a request to not be called had been made, or any of the usual caveats." *See* ECF No. 14 at *2. However, as explained below, if Oxford didn't have adequate telemarketing policies in place, and the fact that they continued to call Mr. Newell despite his repeated requests not to be called is a good indication that they do not, there is nothing else required for that claim.

I. **There is a Private Right of Action Under 47 U.S.C. § 227(c) For Violations of § 64.1200(d).**

The FCC has stated:

[S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. **In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide** that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).[2]

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013) (emphasis added). Of course, the FCC's statement was nothing groundbreaking. Section 227(c) contains a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action to recover $500 to $1,500 per call. 47 U.S.C. § 227(c)(5). The *only* question that matters then is whether § 64.1200(d) was prescribed under § 227(c).

While the language quoted above directly answers this question in the affirmative, it is not the only proof of that fact. To summarize:

- Prior to the initial creation of § 64.1200(d) (then § 64.1200(e)), the FCC quoted § 227(c)(1)(A) and stated that it had identified five potential mechanisms to comply, one of which was company specific do-not-call lists. *1992 NPRM*, 7 FCC Rcd. 2736, 2742 ¶¶ 27, 32 (April 17, 1992).

- In the ensuing rulemaking, the FCC specifically identified § 227(c)(5) as the enforcement mechanism for violations of the company specific do-not-call list. *1992 TCPA Order*, 7 FCC Rcd. 8752, ¶ 24 (1992).

- In 1995, the FCC reiterated that the company-specific do-not-call rules then at § 64.1200(e) were prescribed under § 227(c). 10 FCC Rcd 12391, 12394 ¶ 5

---

[2] The FCC orders do not cite directly in text, but instead refer to footnotes which contain the citations. For example, the citation to 47 C.F.R. § 64.1200(d) is done through a citation to note 87. For convenience and simplicity, Plaintiff will plug the cite directly into the text where the corresponding footnote is found.

4

(FCC 1995).

- In 2003, the FCC amended the company-specific rules, identifying them as then-codified at § 64.1200(e) (which it had enacted under § 227(c)). *2003 TCPA Order*, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, n. 272 (July 3, 2003)

- The modifications it made to those rules can only be found in § 64.1200(d).

- Throughout the 2003 amendment, the FCC refers to the amended company-specific do-not-call rules as being found at § 64.1200(d). *2003 TCPA Order*, 18 FCC Rcd. 14014, ns. 291, 301, 351, 401.

- The only place the specified company-specific do-not-call requirements are currently found is § 64.1200(d).

## II.    The Contours of the Private Right of Action Under § 64.1200(d)

Having established that there is a private right of action under § 64.1200(d), the next question is what that private right of action entails. Section 64.1200(d) provides:

> No person or entity shall initiate **any call for telemarketing purposes** to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards…

47 C.F.R. § 64.1200(d) (proceeding to list the minimum policies and procedures) (emphasis added). "Telemarketing" is a defined term meaning "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). This seems straightforward enough: if a company initiates a call to encourage the purchase or rental of, or investment in, property, goods, or services, then that call violates § 64.1200(d) unless the company had implemented the required minimum procedures.

Combining § 227(c)(5)'s private right of action with § 64.1200(d) yields the following cause of action: Plaintiff must show (1) he received more than one telephone call within a 12-month period (§ 227(c)(5)) (2) from Defendant (§ 227(c)(5)) (3) for telemarketing purposes (§

5

64.1200(d)). Pursuant to 47 C.F.R. 64.1200(e), the rules in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers ….". As a result, the Plaintiff has further narrowed the class to "natural persons".

As such, the Plaintiff's class definition is appropriately tailored:

> All natural persons within the United States to whom: (a) Defendant, and/or a third party acting on its behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

ECF No. 1 at ¶ 54. The final aspect of the claim—that Defendant lacked the policies and procedures required (§ 64.1200(d)(1-6))—is most appropriately read as an affirmative defense. Otherwise this would be the fourth element of Plaintiff's cause of action and would have been included in the class definition.

### a. Consent/Invitation/EBR/Do-Not-Call Requests are Irrelevant to § 64.1200(d)

Absent from either the statute or regulation is any requirement that the call recipient first make a do-not-call request before being able to bring a claim for violations of § 64.1200(d), or any defense to a claim under § 64.1200(d) that the caller initially obtained consent from or had an established business relationship ("EBR") with the recipient. Defendant's arguments to the contrary depend on the Court amending § 64.1200(d) to apply to "telephone solicitations". The former is not only foreclosed by the Hobbs Act, but by the text and history of the regulation. The latter was discussed above and also contravenes the text of the regulation and the FCC's guidance.

The plain language of § 64.1200(d) applies to calls that constitute "telemarketing", the definition for which does not incorporate any notions of consent, rather than calls that constitute "telephone solicitations", the definition for which does incorporate consent. This means that *if* § 64.1200(d) said "no person or entity shall initiate any telephone solicitation…" instead of what it actually says ("initiate any call for telemarketing purposes"), Defendant could plausibly say that

its calls, purportedly made with consent, do not qualify as "telephone solicitations" and thus the regulation is inapplicable. But that is not it says, and rightfully so. After all, what good is a do-not-call request without the policies and procedures to honor it? If a Defendant could avoid liability for not tracking do-not-call requests by saying "the consumer once gave us consent, and we did not track do-not-call requests, so we still have consent", the regulation would be pointless.

In fact, § 64.1200(d) originally did only apply to "telephone solicitations." In 2003, however, the FCC singled out these rules for amendment. *2003 TCPA Order*, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673 (July 3, 2003). The FCC found that

> [T]he company-specific do-not-call approach has not proven ideal as a stand-alone method to protect consumer privacy…. [T]he increase in telemarketing calls over the last decade now places an extraordinary burden on consumers that do not wish to receive telephone solicitations… **In addition, the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request.** Such calls are particularly burdensome for the elderly and disabled consumers. We believe, however, that the measures adopted elsewhere in this order will enhance the effectiveness of the company-specific list.

*2003 TCPA Order*, 2003 FCC LEXIS 3673 at *142-43, ¶ 91 (emphasis added). It then *specifically amended* the company-specific do-not-call rules "to apply to any call for telemarketing purposes."[3] *Id.* at *150 ¶ 96.

This amendment does double duty here. First, it shows that the present version of the company-specific do-not-call rules at § 64.1200(d) was not a drafting error or otherwise inadvertent. Second, it shows that part of the reason for the FCC's amendment was to protect consumers who "do not even have the opportunity to make a do-not-call request." As such, finding a do-not-call request to be required under § 64.1200(d) would not only completely contravene the plain language of the regulation, it would contravene the FCC's stated purpose in amending the

---

[3] This amendment also created the definition of "telemarketing" found at § 64.1200(f)(12)

regulation. How could a do-not-call request be required under a regulation the FCC created to protect those, in part, who did not make a do-not-call request?

Further, the FCC has repeatedly recognized the distinction between § 227(c) regulations which apply exclusively to telephone solicitations (§ 64.1200(c)), and the regulation at issue here (§ 64.1200(d)). For example, the FCC held that

> Under the commission's regulations, no person or entity is permitted to "initiate any telephone solicitation … to any telephone subscriber who has registered his or her telephone number on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). **In addition, no telemarketer may call a residential telephone subscriber unless the telemarketer has established procedures for maintaining a list of persons who do not wish to be called.** *Id.* **§ 64.1200(d).**

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 3 (emphasis added). "Telemarketer" is defined as the person or entity who initiates a telemarketing call. 47 C.F.R. § 64.1200(f)(11). If this is not clear enough, the FCC also wrote in *2003 TCPA Order* that:

> [t]he 'established business relationship', however, is not an exception to the company-specific do-not-call rules. Companies that call their EBR customers must maintain company-specific do-not-call lists and record any do-not-call requests as required by amended 47 C.F.R. § 64.1200(d).

*2003 TCPA Order*, 18 FCC Rcd. 14014 at n.351. If an "EBR" is not a defense to the company-specific do-not-call rules, then the company-specific do-not-call rules cannot apply only to "telephone solicitations", which exempts calls made with an "EBR."

In this sense, Oxford is simply incorrect that the Court will need to conduct any mini-trials to answer the single question of whether or not Oxford had adequate policies in place. If they did, they defeat the claim. If they did not, then all individuals who received more than one telemarketing call in a twelve-month period prevail on their claim.

**III.    Standing**

Oxford's standing argument rests on a faulty assumption: that the class definition includes lawful calls. However, as discussed above, all of the calls are unlawful if they are made

8

without the requisite policies or procedures.

For Plaintiff to have Article III standing, he "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Courts in the Seventh Circuit repeatedly have held that the types of harm caused under the TCPA is a sufficient harm under *Spokeo*. *See e.g. Toney v. Quality Res., Inc.,* 323 F.R.D. 567, 582 n.14 (N.D. Ill. 2018) ("The Court, however, has already ruled that Plaintiff's pleading meets the *Spokeo* standard. And Seventh Circuit precedent... supports the Court's reasoning.") (Castillo, CJ.); *Yates v. Checkers Drive-In Rests., Inc.*, No. 17-cv-9219, 2018 U.S. Dist. LEXIS 105491, at *7 (N.D. Ill. June 25, 2018) (Coleman, J.); *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 854-57 (N.D. Ill. 2016) (Kennelly, J.).

In Congressional findings accompanying the TCPA, it identified the harm it sought to address, finding that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" 105 Stat. 2394, § 2, ¶ 5; *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017) ("The TCPA was enacted to address certain invasive practices related to 'unrestricted telemarketing[.]'"). Intrusions upon seclusion were long recognized in tort law. *See, e.g.* Restatement (Second) of Torts, § 652B. Intrusions could be made via telephone calls. *Id.* The procedures adopted by Congress included mandating that the FCC issue rules to protect privacy rights and specifically consider company-specific do-not-call rules. The FCC, in compliance with this mandate, issued the company-specific do-not-call rules presently found at § 64.1200(d). These rules are meant to prevent "unrestricted telemarketing" and minimize the risk of invasion of privacy from unwanted telemarketing calls.

In other words, "If Congress adopts procedures"—compelling the FCC to consider and

9

enact rules to protect consumer privacy—"designed to minimize the risk of harm to a concrete interest"—policies and procedures to document and honor do-not-call requests are designed minimize the risk of harm to consumer privacy—"then a violation of that procedure that causes even a marginal increase in the risk of harm to the interest"—not implementing the required policies and procedures increases the risk of invasion of privacy—"is sufficient to constitute a concrete injury." *Muransky v. Godiva Chocolatier, Inc.,* 922 F.3d 1175, 1188 (11th Cir. 2019).

As such, Defendant's calls without implementing the requirements of § 64.1200(d) was the type of "unrestricted telemarketing" with which Congress was concerned, and Defendant's failure to implement the required policies and procedures to document and honor do-not-call requests increased the risk that do-not-call requests would neither be documented nor honored, and thus a consumer's privacy would be invaded. This increased risk of harm is directly attributable to Defendant's failures. It's for that reason that Courts have repeatedly found making telemarketing calls without the requisite procedures in place to be a viable cause of action. *See e.g. Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1200-01 (M.D. Tenn. 2017); *see Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 130-31 (D. Conn. 2016).

## **CONCLUSION**

For the foregoing reasons, the Motion to Strike should be denied.

Dated: August 9, 2019

        PLAINTIFF,
        By his attorneys

        */s/ Anthony I. Paronich*
        Anthony I. Paronich
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com

        Brian K. Murphy (6225697)
        Jonathan P. Misny
        Murray Murphy Moul + Basil LLP
        1114 Dublin Road
        Columbus, OH 43215
        (614) 488-0400
        (614) 488-0401 facsimile
        murphy@mmmb.com
        misny@mmmb.com

        Lauren E. Urban (6293832)
        2425 N. Spaulding Ave., Floor 2
        Chicago, IL 60647
        (419) 344-1146
        lauren.elizabeth.urban@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2019, I electronically filed the foregoing, which sent the same to all counsel of record through the Court's CM/ECF system.

        */s/ Anthony I. Paronich*
        Anthony I. Paronich